Your Honor, this case will be brought to the House of Appeals at 0130. The people of the state of Illinois, Franklin, Hathaway, Montgomery, and SerVoss, defendants present, are going to want to be absent. Defendants present, including Haley and Montgomery, are going to want to be present. Franklin, Hathaway, Ms. Mary Ann Plunkett. All right, Ms. Montgomery. Good morning, Your Honors. Counsel. Good morning. May it please the Court, I am Jamie Montgomery. I am with the Office of the State Appellate Defender, appearing today on behalf of the defendant's appellant, Mr. Brandon SerVoss. Mr. Voss has argued on appeal that the trial court improperly considered a factor in aggravation that did not apply to him. Specifically, the factor in question here is found in subsection A-4 of the statute outlining statutory factors in aggravation. And that factor provides that a court may consider in aggravation that the defendant, by the duties of his office or by his position, was obliged to prevent the particular offense committed or to bring those committing it to justice. There's three issues, three questions that have to be answered in this issue, which is, did the court consider the factor, did the factor apply to Mr. SerVoss? And then also, did that factor affect the sentence? So, you know, you may have noticed me holding up pencils because I thought I had taken my pencils in.  And with the budget of the state these days, if I decide to take these pencils home, could this factor be considered against me in a theft charge? No. And why not? Because your job duties as a justice of the appellate court have nothing to do with the use of state funds to purchase office supplies. Well, the judges in West Virginia aren't too excited about that now. They've all been charged with stealing a $42,000 desk and taking it home. It's a little more expensive than the pencils. But the issue seems to be, could I have prevented it? Or should I start with it in a position, charged in a position? Well, in any employee-employer relationship, there's going to be an inherent factor of trust. And every employee is inherently obliged implicitly and morally to not steal from their employer. This statutory factor goes beyond just the normal trust that's placed in employees and requires that you have to have, as part of your job duties, be the prevention of that particular offense or bringing people committing it to justice. So if, let's say, the facts here were that Mr. Servas had been a security officer or a loss prevention officer at, say, Walmart, and he was either allowing others to shoplift or had shoplifted himself, certainly this factor would apply to him because his job duties as a loss prevention officer or security guard at that store would require him to prevent theft and also bring those committing it to justice. So does the requirement of preventing someone from committing that offense mean, in that provision, that particular section, that the person actually has to have that as an official part of his or her duties? I think that there needs to be a more— that, yes, there needs to be some officialness to that requirement and that prevention and bringing others to justice is the key here. And it has to be more than just preventing yourself from doing it because, again, that gets us back to the inherent employee-employer trust relationship. If this situation, rather than a three- or four-man company, if it was a 30- or 40-person company, and this was the bookkeeper who paid all the bills and signed all the checks, that would probably fit within that category, wouldn't you agree? Oh, yeah. Absolutely. So doesn't it—isn't it a contextual thing where it could be with a three- or four-person company if that person's job is to take these bills and to match them up with the expenses on the credit card statement and so forth and then takes it to the owner to pay the bills? Doesn't he fit them within that category by virtue of the context of it? Well, first of all, I think that there—you know, this wasn't a large company. And, however, there isn't enough factual basis on this record to show that he had the kind of job description that would support this finding here. Well, a lot of small companies may not even have a job description. It may just be, hey, you think you can sign these checks? Come on in and that's your job, you know. Well, I mean, he started—I believe the letter indicated that he started the company and kind of worked his way up and had gained more trust. That's true. And was given more responsibilities. But nothing about him bringing the bills to his boss to approve indicates that he himself was required to prevent other people from committing theft or that he was obliged to report others who did. And, you know, the other factor here that the state points to is that there was— that he had a company credit card. And there are—I hazard a guess, there are thousands of people, at least in the country, who have company credit cards. But not every person who has issued a company credit card is then obliged to prevent their coworkers from stealing money or to report their coworkers who had their expense reports. Well, if somebody else had been in his position, they would have seen what he was doing, right? If somebody else has taken the bills to the boss, they would say, hey, look what Brandon Cervos is charging up here, and it doesn't look legit. So by virtue of the fact that he's in that position, he's preventing this from being discovered. Well, but he was bringing the bills to his boss. His boss was looking at them and reviewing them, and his boss was the one who was in charge of determining whether or not the bills got paid. And there isn't enough here on this record for us to see, first of all, how long Brandon's job involved bringing the bills to his boss. It could be that that was his job duties towards the end of his employment there. Or it could have been that it was much longer. But we don't know if at the point Brandon began abusing the company credit card, whether or not he was even in that position at the time. Because there just isn't enough here. There's a letter from Mr. Gradak that focused a lot on his feelings of betrayal and the abuse of trust, but that isn't enough to get a consideration under Section 8-4. One of the cases that addresses this is that Myers case from the 3rd District. Yes. Which speaks of a substantial indicia of responsibility. True. How would you define that? What would you say in this context, what would you say is a substantial indicia of responsibility? Well, it's important to note first that the statutory language says nothing about a substantial indicia of responsibility. The statutory language requires the duty and an obligation to prevent and to bring those to justice. So the Myers use of that phrasing is sort of a loose interpretation of that, I guess. But in Myers, they were looking at, they were faced with the situation where, okay, pretty similar to what we have here, which is we have an employee who committed an offense where the victim is their employer. And, you know, they looked at what were Mr. Myers' job duties at that A to Z rental place or whatever it was to determine whether or not he did have any position in the company or duties related to that that would have required him to prevent arson and found that he did not because he was merely an employee and had no further duty to his employer other than just the usual, you know, trust that's placed in an employee. There is no evidence that anybody else is stealing from or is taking funds from this company, correct? Correct. And so, I mean, is it realistic to, even if he was the controller, does it make sense that he would have an obligation under that job to report himself? I mean, I'm not sure how this aggravating factor even applies to the situation where this is the person taking the property or taking the money or taking whatever isn't his because most, yes, they're employees and they should comply with the trust given to them or, you know, honor the trust given to them. But if they're going to steal, they're going to steal. They're not going to say, oh, by the way, I'm stealing. Correct. However, they're in that position of being the controller or the CFO or a loss prevention officer. I mean, each of those job duties, job descriptions would require that person to be looking for theft and bringing others who have committed it, you know, to be looking for other people committing the theft and bringing those people to justice as the statutory language says. So even if they, you know, if, you know, as we're recognizing, it's kind of silly to think that they're going to bring themselves to justice. But the fact of the matter in those situations would be that they did have, that was part of their job duty, which is why we consider the abuse of that level of trust that's placed in an employee like that to be something worth a statutory aggravating factor. And, you know, this, getting outside of like the theft realm, this would apply in a situation, say, if a police officer off-duty committed a DUI offense. And, you know, in that situation, as a police officer, their job is to prevent crime and bring those committing it to justice.  He would have been obliged to stop that person. I think it's a little clearer to see it in that way than when we get down to money. Well, I guess I would think that the more reasonable approach might be, you're the comptroller of this company, why are you doing this? As opposed to you had an obligation to stop this from happening, why didn't you punish yourself? I mean, it just, I would see why Judge McAuliffe might have a hard time identifying this issue. Sure. And it is, you know, there's only three published cases that even deal with this section, and two of them, the Bosley and the Zemke cases, involved sex offense cases. And in each of those cases, the defendants were in, you know, positions of trust, and, you know, one was a pastor and one was a firefighter. And they each abused the trust that was placed in them by the community, and certainly with the pastor, but by their employer, to commit the offenses. But the court there found, in both of those cases, that nothing about their jobs as a pastor or as a firefighter required them to prevent the sex offense that occurred or to bring people to justice. They said, you know, a firefighter's job is to prevent and fight fires. The pastor's job is, I don't remember how they defined that, if they did. But in neither situation is that part of their job. And because of that, A-4 doesn't apply to them. Now, interestingly, in the wake of those, the legislature acted and created additional statutory aggravating factors to cover situations like that. However, in the wake of Myers, where the court essentially said you have to be more than just an employee, the legislature has amended the statutory aggravating factor statute over 45 times since Myers and has made no changes to A-4 or in any way indicated that it did not agree with the court's decision there. So I think it's evident that the legislature agrees that they meant more than just you're an employer or you're an employee who committed an offense against your, excuse me, you're an employer, your employee, employer, leave it there. And here it's very evident that the court was looking at A-4. The state doesn't contest that. And the, you know, and it's evident that the court also placed not insignificant weight on this factor. There was only three factors in aggravation that the court recognized. And when it came, when this factor and the fact that the judge may have, you know, misapplied this factor to this situation, that was raised by him at the motion to reconsider sentence. And when the court was given, may I complete my, when the court was given the opportunity to clarify its position or back off and say, I didn't, I did not consider that factor or, well, I talked about it, but I didn't really give it that much weight. The court instead doubled down and said, no, this factor applies, and then went on to sort of berate the defense counsel a little bit for citing cases the court found to be an opposite, which were actually a point, and the court then misconstrued the holding in one of them. So I'll reserve the rest of my time for Ernie. Thank you. Before we begin the actual argument, Ms. Fleming, I want to discuss the certify, the motion for certify, and the actual certify. Does the appellant have any objection to that filing? We are. Thank you. All right. You may proceed.  Good morning, Counsel. Good morning. Good morning, Your Honors. Counsel, may it please the court, Mary Fleming, Assistant State's Attorney, on behalf of the DuPage County State's Attorney's Office. The state's position today is that the trial court didn't consider an improper factor in aggravation. The trial court found that the defendant, by the duties of his office or his position, was obliged to prevent this particular offense that was committed. The evidence showed that the defendant was responsible for the company's inventory. He was paying the company's bills. He was using credit cards to purchase equipment and supplies. He had oversight and dispensation of the company's funds. He ran the office while the gray dicks were out. He stepped into their shoes. It was a small company, 12 or 13 people total, three or four in the office with defendant and the two gray dicks. They were the majority of the office. He was definitely. But why wasn't, I mean, he wasn't given any, well, at least the record doesn't show us he was given any premium in his salary. That's probably why he was taking the money. Or he wasn't given any title that he could hold out to the, you know, to the world. Oh, look, I'm the comptroller of this company. I mean, he wasn't given anything special that would indicate he had this position or that he should prevent even himself from stealing. I mean, I had a judge way back when I was in the trial court as an assistant state's attorney who looked at me after a preliminary hearing, we don't even do those anymore, I guess, and said, aside from being not too nice a person, what real offense was committed here, counsel, or Mrs. State's attorney, he always called me, and I was not married to the state's attorney, but Mrs. State's attorney, and, you know, this is the same problem. Aside from the fact that he is an employee charged generally with taking care of the bills, how are we going to make that a factor in aggravation that he didn't report himself or he didn't prevent himself from getting into the cookie jar? Okay, so this wasn't a large corporation, you're correct. There wasn't a CFO that wasn't technically his only job, but that was part of his job. And when we start to look at the Myers case, that's one of the few cases, there's very little case law to guide us in this area. The Myers case does talk about they don't want to apply A-4 just to an employee. In that case, who's delivering goods, who's collecting payment. They want to see some kind of supervisory authority, managerial authority, or someone who it's their job to prevent the crime. Like in that case, the defendant started a fire, but he wasn't a security guard, so starting the fire wasn't tied to his job at all. Here, above who a defendant's position, he wouldn't have been in a position to commit this crime. He was able to make charges, funnel money through his personal account, his church account, and hide that. It was aggravating that he was a trusted employee who took advantage of that trust in his position. But what about the other part of the sentence here, that the person, by duties of the officer, his position, was obliged to prevent the particular offense committed or bring offenders to justice? How does that fit? Well, in this situation, because he was checking the bills, because he was taking it to his employer to check, because he was making sure the inventory of getting the company bills matched, if it wasn't him, he would have normally noticed that, and that would have come out in the accounting. He was acting as perhaps the worst accountant ever, but that was his job, to keep track of that. And it would have put him in an awkward situation to turn himself in, but his job put him in a position where he could commit this crime. But isn't that the offense here we're talking about? He did this. This is the offense. He took advantage of his employment, not necessarily his position, but his employment, to steal from his employer. That's the offense that was charged. Right, and in Myers, if he had been a security guard and he had set the fire, then he would have fit within A4. The court found that that would have been that type of a situation. So he would have found himself in that situation. I'm supposed to be stopping myself from setting the fire, but I'm setting the fire. The same kind of situation we find this defendant in. Now, it looks like the bills got paid while he wasn't there, on one of his many vacations that he was taking on the company charge card. And, in fact, other people paid the bills, and that's how this all got found out. So he's not the only one responsible to pay the bills, correct? No, he was not exclusive. And surely someone else had to step in when he was on vacation, just like he stepped in when the Greataks were out of the office. Apparently the Greataks didn't go away as much. Right? There wasn't as much money. And so the state's position as well would be that those factors that we're looking at, that's not exclusive either. The trial judge clearly was trying to find a place for this defendant, that it was A4 or that it was a position of trust, that he was a trusted employee. He wanted to consider that an aggravation, one of the three factors he considered. There wasn't... I was going to ask that. Go ahead, I saw you. But isn't there also something in the sentencing statutes that allows the trial court to consider any other relevant factor in aggravation as well? Is that general language in the U.S. law? Correct. That is. And this Court has cited that language before. And that section of the statute begins with that section. It's not a limitation. And, obviously, the judge wanted to consider that relevant information. He thought it was very relevant in this case. He talked about it originally in the sentencing, and he talked about it in reconsideration, trying to fit it into factor A4, or if not, at least a position of trust that was abused in this case. He found the position of trust, the prior criminal history, and refreshed my memory of what was the third factor in aggravation. I've got that right here. It was this history, the A4. Or you can answer that in your rebuttal. I'm just drawing a blank here. I know I read it, but I can't. I need the power of obligation to do that. Okay. It was an obsession of trust. Just one second, and I will have that for you. Oh, I'm sorry. Deter others. It was necessary to deter others. You're right. Correct. It was deter others. Right. That's right. And the trial judge said he considered all three. He found that important. Did he somehow, did the trial court somehow confuse the actual responsibility the defendant had at the church? Because he did have a title at the church, that he was a youth minister, so was his wife. Was that what he was looking at when he looked at A4, or was he looking at the company? He seemed to talk about the company. He concentrated on his actions there. He really didn't talk about the church much, although that's part of it, that that's where he funneled the money through. The judge found it more aggravating that he had taken this money from the company that he worked for, where he had responsibilities for the company's bills and inventory, and that he had abused that trust. If there's nothing further, the people would ask that the court affirm, the trial court's decision. Thank you. All right, Ms. Montgomery, you're off the hook for the question, because we figured it out. Let me just ask you this question. The defendant clearly had responsibility for financial matters, correct? Limited responsibility. Now, if this had been the warehouse guy who was responsible for putting inventory on the shelves, and somehow he had, maybe just by virtue of longevity, he had a company credit card, and he was doing this, wouldn't that be a huge difference? I don't think that there's enough on this record here to really tell us how much responsibility Mr. Cervas actually had to this company. The state's brief characterizes it as him running the office and paying the bills. Now, the citations in the state's brief are to the assistant state's attorney's argument at the motion to reconsider sentence, not to the actual evidence. And, of course, the state's attorney is permitted to argue and make inferences. However, I believe the actual evidence about his responsibilities within the office were along the lines of he would answer the phones when the grade X were gone from the office, or would handle, if the dispatcher was gone, he would help with the dispatcher stuff. And there was very minimal information having to do with the actual handling of money. There was that he had a company credit card, and that he brought the bills to Mr. Gradak to approve. Do we know if he actually signed checks? No, we don't. I don't believe there's anything in the record that tells us whether, you know, whether he carried out Mr. Gradak's direction to pay the bills or if, yeah, I don't believe there's enough. I'm not sure, but I don't think there's anything in there. There's nothing. I know there's nothing that says he signed checks. I'm not sure exactly what precisely is there, if there is anything precise, about how the bills were actually paid once Mr. Gradak signed off on it. But obviously, the bills got paid before he was there. They got paid after he was gone. They got paid while he was on vacation. And so he wasn't the only one responsible for the money, and there just isn't enough here to show that he had the heightened duties and obligations that A-4 requires. Now, earlier, Justice Zinoff commented on the court could have just considered this as, you know, circumstances of the offense. And, of course, the court could have. It would have been the court could have considered the fact that he abused the trust. However, the court here very clearly considered it as a statutory aggravating factor, and the case law is clear that statutory aggravating factors are treated differently than other factors and other circumstances of the offense. You know, if it was okay for him to just consider this as a circumstance of the offense, but not okay for him to consider it as A-4, we wouldn't have the rulings in Zemke and Myers and Bosley that we have, where they're, you know, in each of those cases, the circumstances of the offense involved an abuse of trust. However, in those cases, they pointed out that, you know, this is not this aggravating factor. And I think there's something inherent in statutory aggravating factors that gives them a bit more gravity and weight when a court is considering them. And it may be that the judge gave more weight to this, thinking that it was a statutory aggravating factor, than he would have had he just considered it as circumstances of the offense. And additionally, here, where we've got, you know, the two other aggravating factors are certainly not unique. And, you know, deterrence is always a factor. I don't know. And the other is, I'm going to move on to, and this other one was the criminal history. And the criminal history here was minimal. It was one prior offense. Granted, it was similar. That's not money. Yes. Significant money, we're talking here. But neither one prior and the need to deter justifies double the minimum sentence, or, you know, considering this factor here. Additionally, there was one further point I wanted to clarify for my brief, if I may. In our brief, we did ask this court to reduce the sentence outright, as opposed to remand. And remand is generally the relief given when error like this is found. However, Mr. Cervas has been on work release for some time now and is scheduled to be released from the Department of Corrections fully onto MSR in less than nine-and-a-half months. And, therefore, we'd ask this court to exercise its power under 615B and simply reduce the sentence due to the timeframe we're working with here, rather than remanding the case for resentencing. If there are no further questions, we ask the court to do as I just asked. Thank you. Thank you very much for argument this morning. We will take matter under advisement and make a decision in due course. We're going to stand in recess for a short time to prepare for our next case.